Good morning. May it please the court. I think the starting position is to take a look at the statute itself and Kim reaffirmed that the right to pursue civil penalties belongs to the state and not an individual employee. When the California legislature created the PAGA, it created a series of conditions precedence that not only the employee had to follow but the state agency had to follow. Those conditions precedence, when they were met, created a proxy of the state's rights to the to the employee who was going to be the representative. From that perspective, he becomes deputized and he gets a badge. What if opposing counsel argues, well the state approved the settlement or at least disapproved the settlement, and so any of those statutory standing issues are waived. What's your response to that? I'm very sorry, Judge. I did not hear the beginning of your statement. I said opposing counsel. Can you hear me now? I can hear you now. Okay, opposing counsel argues that because the state approved or at least disapproved the settlement, any of those precedent precedent statutory standing issues are waived. What's your response? Well, I think it's a it's a false position to say that they approved the settlement. There's a process where you submit the settlement to the LWDA online, but you know they're what happens in real life is different than perhaps the way that counsel would like to characterize it. So it's deemed approved. It's not objected to by the state, so the settlement is deemed approved. Well, the question becomes, do they have an obligation to object to it? I mean, I think that's really what ends up happening. I think their position, and I've been doing this a long time and I've seen enough of these cases to know that what ends up happening is they believe that once they turn it over to their proxy, they are going to let the proxy make the determination most of the time. And if you take a look at a couple of the amicus briefs that were filed with judicial notice, that's exactly what they do. They really don't get into the weeds. They leave it up to their proxy. So I'm, I don't, I don't, I think that's a false statement to say that they approve the settlement. If you're right, what, how does that, how does that impact Mr. Peck's, if you will, standing on the PAGA issue? Well, I mean, they're on the PAGA issue. He has standing because he is essentially a quitam type of action, and he has the right to bring the action. But he wasn't a representative in this particular case. He could bring his own quitam action, I suppose. But he had, he's a stranger to this particular action. He's not the representative. Well, well, is he, is he a stranger to the action? I mean, this is a, it, it, it is really, Judge Smith has it right when he says it's convoluted, because really the, the, the way that this is set up is that there are overlapping interests. So you could have one, more than one person representing the state on the same set of claims. And so now what is the obligation? Let's take a look at the obligation of Mr. Peck as this sheriff who's wearing a badge, who's trying to do the best he can for the state. All of a sudden, he sees that there's a, that there's a settlement that's, that is going to wipe out his claim. And, and they didn't even have a valid basis to pursue. In this case, it's the 2802 claim. Except that a different bounty hunter got the bounty first. The real priority and interest is the state, according to the California courts. Except that a different bounty hunter represented the state and got the bounty, and your client is too late to the party. Well, it, unfortunately with that view, then what you're knocking out is the statutory scheme of the California legislature. Because what the California legislature indicates is that there is a pattern under 2699.3 that must be followed. And the conditions precedence, and once again, there are amicus briefs by the Department of Labor Standards that discuss this. And this is, this is our whole claim panel, that really what we have here is an overbroad release. We're not saying that all the claims of, of, of, of Saucillo or Rudso. And by the way, Saucillo really shouldn't have any right to go forward because he didn't even follow an LWDA letter. But recognize the fact that all of these issues are going forward at, at, at the same time. And if you take a look at the structure of the settlement itself, it was a class settlement that included a POG acclaim that was certified. So from yet another perspective, yet another perspective of standing, my client, Mr. Peck, had the right to object. He had a beneficial interest as a class member. So that's yet another angle. The third angle is that he was invited by the court to pursue the objection. I guess my, what I struggle with, and I think my colleagues the same way on this, is that your client has one, if you will, set of rights in connection with the class action. There's quite another set of rights with respect to the POG action. And I guess I struggle with the fact that whether Mr. Peck has any standing at all under POG, because he's not really personally involved there. How does he have a POG claim? Well, he has a, he has a POG acclaim because he sent the LWDA letter. No, I understand that, but I mean, personally, personally, does he have a POG acclaim? Well, Anybody can make a POG acclaim, right? You agree with that? You don't need a class action for that. Clearly, under the California Supreme Court, there are no individual claims. It belongs to the collective. Exactly. That's my concern. That's what my colleague has said. This is, it's like a key thing, you mentioned that as well. But the question is, in this case, does he personally have the standing on the POG acclaim? Does he personally have any right under POG that would enable him to do that? Well, he would have the rights that the state would have. Got it. If you're eating up your rebuttal time, you can do whatever you want, but you wanted to save five minutes, and we are now approving. I did want to save some time, but yes, why don't I save my time? Whatever you like. Yes. Okay, so we're now going to hear, not from Mr. Mars, but from Mr. Clapp, who has five minutes and is aspiring to save one minute. Good luck, Mr. Clapp. Thank you very much, Your Honor. It's a pleasure to meet you all. Your Honor, I believe the district court, when it's reviewing a class settlement, must look for evidence of collusion, must look for evidence of conflicts of interest. And the degree of the scrutiny varies with the circumstances. And in my view, this case is a case that demands very, very strict scrutiny. It's something that was made, a settlement that was made not after the counsel and the representative was vetted and we had certification, but before certification. And more than that, it was after the denial of the certification. And the incentives vary at that point. Not only are plaintiffs counsel looking for fees, but now they have sunk costs that they are worried about. In this case, we have like 2,400 hours of time that essentially evaporated upon the denial of the certification. And that's a tremendous burden on a plaintiff's counsel, I can tell you from personal experience. And in this case, they essentially abandoned their case after they had the denial of certification. And we have sort of a target-rich environment because we have, what, 13 other plaintiffs' firms trying to bring class actions against this particular defendant on these particular issues. Yes, it is, Counsel Lee. And this may not be exactly what you wanted to focus on, but since you're representing Mr. Morris in this, the case of Rose v. SFBSC management seemed to be pretty much right on point to what happened here. You have an approval before the settlement has been approved. The standard, the high standard to which you made reference did not occur. In Rose, the district court was reversed and somewhat chastised by the court. What's your position with respect to Rose v. SFBSC management in this case? I think I agree. I think it's right on point. It tells us that there has to be a searching inquiry for subtle signs of self-interest. And we have many subtle signs here that, well, I wouldn't even think they're subtle signs. I mean, one is we don't have a clear sailing agreement. I mean, we do have a clear sailing agreement, and we didn't have any inquiry about what the class got. Why, you know, why are we, why did the defense counsel call up the Russell, you know, counsel? Counsel had, their case had been staged for five years, and they could have called anybody up in the whole universe, 13 other plaintiffs' counsel they could have called. Why did they call the firm that was not doing anything whatsoever to prosecute this case? These are questions I think that a skeptical court would be looking at. The judge in this case referred to some, I don't want to use the wrong term, settlement master, somebody else that looked at it. What role, if any, should we attribute to that? Is that sufficient, or does that not meet the requirements of Rose? It's a mediator, and I think Rose told us that it's certainly nice to have somebody else who's involved, but that's not sufficient, I think is what, you know, Rose basically tells us. That does not, that does not absolve the district court from its obligation to really look very carefully at these things to determine whether or not this particular settlement should have been overturned. Okay, do you want to save the rest of your time for rebuttal? I would, Your Honor. Thank you. Very well. We're doing very well so far here. Okay, so now we're going to go to Mr. Gupta, I believe, is next. And you don't have any time to save, so you just go right ahead, please. Okay, thank you, and may it please the Court, Deepak Gupta for the settling plaintiffs. The class action settlement in this case involved hard-fought litigation in two consolidated cases going back a decade, including numerous depositions and substantial written discovery, including the production of more than one million pages of documents. The settlement was negotiated in the shadow of uncertainty and fights over major threshold legal issues. Most significantly, perhaps. Could I ask how you, just following up on Judge Smith's question to Mr. Clapp, how do you distinguish Rose, because the district court did say there was a presumption that the agreement is fair, whereas Rose says actually it's quite the opposite. There should be a requirement of having higher scrutiny because it's prior to class certification. So how do you distinguish Rose? Sure. Well, I think what the district court said, if you actually look at – this is pages four through five of the opinion. The text of the district court's opinion says that the settlement agreement is presumptively the product of a non-collusive arm's-length negotiation. But that's not correct, is it? Isn't that incorrect? That's not correct, Judge Smith. Let me just try to unpack this because I think Judge Ikuda is correct. What you cannot draw from the fact that there was an arm's-length negotiation is a presumption that the entire settlement is fair. But remember that revised Rule 23e directs the district court to consider as one factor whether there were arm's-length negotiations. And so what I think the fair reading of what the district court did at pages four through five is to conclude that on that factor, the fact that there were arm's-length negotiations cut in favor of approval. But the district court went through each factor and did not allow the arm's-length negotiation to infect or to affect the analysis on any of the other factors. And in fact, I think what's most important is what the district court did. And what the district court did here was not act as a rubber stamp but put the parties to their paces, both at preliminary approval and at final approval. This district court was not satisfied with the original briefing. It asked for supplemental briefing. It held the court to a high standard on the evaluations. It went through the cost and fee records, fly-spec'ed them, and significantly reduced the fees. And so if you're asking, did this court apply a heightened standard of scrutiny? I think the record shows that the district court did. If there's any error here, it's that the district court's law clerk allowed the district court to cite the district court decision in Rose without adding, you know, reversed on appeal. And really, they should have cited the Ninth Circuit's decision. But not only that, you relied upon that, used almost the exact language of Rose that we reversed. And what other than Rose did the district court cite? Rely on the point that you're making. Oh, I mean, the district court, you know, that citation to Rose proceeds of the sentence that I read you that says that this was the product of a non-collusive arms-length negotiation, which is correct. And then the district court's conclusion in that paragraph was this factor favors approval. All the other discussion of the standard has nothing, you know, there's nothing wrong with it. And if you look at what the district court did, as I said, it engaged in heightened scrutiny. And I just think it's important to look at what was animating this court's decision in Rose. While I'm thinking about this, I want to get your take on it. My reading was that the district court followed Rose almost in hype verba. Did I miss something? The Ninth Circuit, this court's decision in Rose, I think, is totally consistent with what the district court did here. What Rose, this court's decision. I understand that, but didn't the district court in this case follow the language of the district court in Rose before we reversed it? No, I don't think so, Judge Smith. I think the only reference to Rose is nested in this paragraph at page 4 of the district court's decision. And it's along the way to the district court making a totally unremarkable conclusion, which is that the fact that there was arms-length negotiation favors approval on that one factor. There's nothing wrong with that. That's totally consistent with Ninth Circuit. You think the Rose side would just like part of a string side that the court didn't rely on? I think the problem, frankly, I mean, just candidly, the problem is the parenthetical that quotes from that district court decision. If I were the district court's law clerk, I would have said, let's change that citation. But we don't review district court decisions because of improper citations. We review what the district court did. Unless the district court relied upon something that turned out to be incorrect and it seemed like that's what happened. In that case, we do worry about it. I think the question is whether the district court abused its discretion in approving the settlement. And the Ninth Circuit's decision in Rose pointed to a whole set of very troubling signs of collusion that indicated heightened scrutiny there, none of which are present here. You had more money going to the lawyers than the class. You had coupons. You had injunctive relief that was valued at a million dollars. You had the difference between reversionary and non-reversionary funds. So on every single metric, this case is fundamentally different from that case. And yet this district court in this, I think, honestly, a pretty unremarkable, in fact, miraculous settlement, given the odds against the plaintiffs, put the parties to their paces. As I said, I mean, this was not a district judge who left anything to deference to the parties. He was driving a near religious certainty to it. Well, you know, I think when you ask did the district court abuse its discretion, you're asking what did the district court do, not did the district court cite one case that was the wrong case. Let me just interject here. So the district court said, and I'm quoting, the settlement agreement is therefore presumptively the product of non-collusive arms and negotiation. Yes. And so, and then I throw the SFPSC. So are we supposed to ignore that language and not say that it had a presumption? Judge Ikuto, I don't think I was clear enough earlier. So all she is saying is this is presumptively the product of arms-length negotiation. There's nothing wrong with that statement. What would be wrong would be if the court said because there was arms-length, after all, Rule 23E directs the court to determine whether there was arms-length negotiation. What would have been wrong is if the district court drew from that conclusion a presumption that the entire settlement was fair and then applied that presumption rather than engage in the kind of rigorous analysis that we think the district court did. So right before that sentence, he says, in addition, the involvement of experienced class action counsel and the fact that the settlement agreement was reached in arms-length negotiation after relevant discovery had taken place create a presumption that the agreement is fair, which is what you just said was wrong. Well, I don't think there's anything in the district court's decision that shows that she relied on a presumption that the entire agreement was fair and declined to engage in careful scrutiny as a result. And just to make this clear, the next page, right, so if you flip to page 5 of the opinion, this is excerpts of record page 8, what she says at the end of this paragraph is this factor weighs in favor of approval. Again, there's nothing wrong. It's sort of tautological. Obviously, if there's arms-length negotiation, then the factor about arms-length negotiation weighs in favor of approval. But nowhere else in the opinion is there an indication that the district court allowed that to prevent her from engaging in the kind of rigorous scrutiny that's required. And that was the problem in Rose. The district judge in Rose started with that presumption and ended with that presumption and did not look at the subtle signs of collusion that infected every aspect of the settlement in that case. We've let you go a little longer here, Mr. Gupta, because we love listening to what you're having to say. So now we have Mr. Cowley. Mr. Cowley, I'd like to ask you, I didn't ask your colleague about this, but so far as I can tell, no circuit has addressed whether an objector can waive an objection related to the district court's legal standard. The Newberg Treatise suggests that he can. Would you like to comment on that, please? Your Honor, Paul Cowley for Appellee Swift Transportation Company. May it please the Court, I didn't catch your full question. Would you mind repeating it? I'll be happy to repeat it. What I said was that no circuit I'm aware of has addressed whether an objector can waive an objection related to the district court's legal standard. There's been a claim that it was waived. So what I want to know is, do you have any authority that you can cite that would say that, in this case, Mr. Peck, or Mr. Maris for that matter, has or does not have the right to waive an objection to the district court's legal standard applied in this case? Your Honor, I'm not certain that I followed the exact question. In terms of some of the issues that are being raised on appeal, they are being raised for the first time by plaintiff, Maris, and Peck, and they were waived because they were not raised at the trial court. And my question is, is there a case law that says that an objector can't waive that because it goes to the heart of what happened here, the district court's standard for review? Can an objector waive that issue? Your Honor, in a typical class setting, if an objector has not raised the issue in the trial court, the objector is then not able to raise that issue on appeal. Well, wait a second. I don't really understand this. The appeal is claiming there are errors in the district court's opinion. Obviously, you can't raise an error in the district court opinion before the district court issues its opinion. How can that possibly be waived? I mean, that's what happens in every criminal case, in every civil case. If you're identifying an error in the opinion, you haven't waived it before the opinion is issued. So help me understand how that could possibly be waived. Judge Okuda, I think it depends on which issue we're speaking to because we aren't being precise. If we're talking about the Rose issue that you were just speaking with my friend, Mr. Gupta, in terms of the overall appeal, it's very clear in terms of the overall decision. It's very clear the district court went through each of the handling factors and carefully scrutinized the settlement. This case is not on all fours at all with Rose where there were numerous red flags as to collusion. Having personally litigated this case for over a decade, I can tell you that there is far from collusion and very much to the contrary. It took us over a year after mediation to even reach a conclusion. But it is true, is it not, that the settlement agreement had not been approved in this case before the district judge blessed the settlement, right? I mean, before the district judge approved this matter. Your Honor, I didn't understand the question. The settlement agreement had not been… What I'm saying is your colleague referred to a presumption, and I thought that in Rose you had a similar situation where the settlement agreement had not yet been approved and the district court applied a presumption in favor of the settlement agreement even though the agreement itself had not been signed. In other words, when it's before the district court makes the determination, then you have a certain standard of review afterwards. This was done before. That's just like Rose, is it not? No, Your Honor. Here we had a signed settlement agreement, preliminary approval granted. That's not the question. You said preliminary approval was granted. Do you have a record side on that? Yes, the preliminary approval order. Your Honor, I can get it, but it's in the record that the order was preliminary approved about six months before final approval. But the class wasn't certified. Isn't that right? That's what makes it the same as Rose. The class was not certified. There had been no class certification. So it was unknown whether the district court had denied class certification and no class was certified, which was the same situation as in Rose, correct? Well, to say that's the same situation as Rose, that one point, a class had not been certified because in this case, in Mara's case, and in multiple other cases, class certification had been denied on very similar facts. But that's what we relied on. We said a settlement agreement when the class certification has not yet occurred requires heightened scrutiny. So the district court was bound to give heightened scrutiny under our decision in Rose, correct? Your Honor, the principle that that stands for is pre-class certification is because the parties are deemed to have not, how much discovery has been conducted, how much does the court know about the case? That's not what we said. We just said pre-class certification, and both of these situations are pre-class certification. Could you just tell me am I right on that? Isn't that correct? That's what you said in Rose, but the principle for it was because the court didn't know, or the parties presumably didn't know as much about the case. Just for clarification, Judge Ikuda, of course, is correct. I misspoke when I said settlement agreement. It's the fact that there was no class certification in this case, and there is a heightened review required. And the question here is, did the district judge go forward with a presumption that everything was okay? No, and that's the point, Your Honor, and that's the point my friend Mr. Gupta made, which is even if a heightened standard applied, this district court went through each of the handling factors, went through, it's very clear from the final order, looked at every aspect of the agreement, requested additional briefing, requested additional evidence, allowed objectors to argue extensively both at the preliminary approval hearing and at the final approval hearing. There was multiple briefing from multiple parties in addition to the two appellants we have here, and it was very carefully scrutinized under even a heightened standard. Your Honor, if I would bring you all back to, it's the appellant's burden here to make a strong showing of a clear abuse of a discretion, and we all have an extremely limited role in reviewing an approval of class settlement that the district court made. And so in terms of wordsmithing a long and detailed order and trying to nitpick as to whether there was one site which maybe now isn't perfect, it's very clear what the district court did was apply the handling factors, and it met the heightened scrutiny, even if such heightened scrutiny applied. I take your point, but on the idea of abuse of discretion, it is an abuse of discretion to apply the incorrect legal standard, is it not? Your Honor, that would be correct. Our point is that the court went on to apply even the heightened scrutiny. I get that. Your point is that even if the court said the wrong thing, what it did comply with the handling factors, and that's enough. Is that right? Exactly. Otherwise, yes. Yes, Your Honor. Okay. Let me ask my colleagues, does either have any additional questions for either Mr. Gupta or Mr. Cowie? No. Okay. Very well. So we've got, we're back to Mr. Fialkow, who has a few minutes, and also Mr. Clapp has a few minutes, so we'll start with Mr. Fialkow. Thank you, Judge. I want to respond to Judge Smith's inquiry when I decided to reserve my time, and that was whether or not Mr. Peck has any standing whatsoever. Before I get to that, though, we've been talking about handling factors, Rule 23, but understand that under the California statute itself, there's an independent basis that a judge has an obligation to review the HAGA settlement to determine whether or not it's fair. What characterizes it being fair is an issue of discussion, but the law has been, everybody did a good job and put the law in the briefs. But I want to talk to you for a minute about the practical approach. If this court was to take the approach that there's no standing for a HAGA objector, on whatever legal basis they do, what is the effect of that to the California HAGA statute itself? Does that create more collusion? Does that create a scenario where you are creating a scenario where two parties, and when there's multi-people trying to do the claims for the LWDA, get left out of the park and claims are being sold at wholesale? Doesn't it kind of go against the whole idea of an adversarial system where there's notice and everybody gets a chance to talk about what's right? I thought it was the state's claim. Like in the False Claims Act, it's the state's claim. So, of course, if the state didn't think that it was being properly presented, the state could intervene pursuant to the statutory permissions. Judge, I have to disagree with your perspective because from the way I see it is that under the California statute, if the condition precedents are met, there is a proxy of the state's agency's rights that goes to the deputized individual to make those claims. Now, let's say under a different commissioner, five years later, they decide to get more active and take away those rights and get more involved. But right now, we have a policy by a commissioner that decides to leave it to the individuals that have the proxy. Isn't that the state's prerogative to do so? Yes, it's the state's prerogative to do so, but it's also the court's obligation to realize that the state is leaving it to the proxy. So then if you say the proxy doesn't have the right to advance the objectives that they think is best for the state, then it's like being on a Mobius strip and there's no way off. Okay. Let me ask my colleague, does either have any additional questions for Mr. Fialkow? No. Very well. So, Mr. Clapp, you're the last word here. You have 55 seconds. Your Honor, thank you very much. I guess what I'd like to say is the court should have applied a heightened standard. I think we can all agree on that. And if you look what the court did, it failed to do that. And the clearest point to look at, I think, is just the math. Math is math. And you can see that they, you know, if you go through and just do sixth grade arithmetic, that their math just does not add up. We really don't know how many class members they are. They say there's 19,500 class members, and yet their own evidence suggests that in a shorter period and included period of time, there is 20,900 members. They say there's, you know, 850,000 work weeks, yet their math doesn't add up. If there's, like, 2,000, you know, average drivers in a work week and 669 work weeks, the math doesn't add up. If the math doesn't add up. You're out of time, but I have one quick question I ask my colleagues if they have an additional one. I want to ask you, does Mr. Peck have standing with respect to PAGA? Mr. Peck? I've got Mr. Peck's question, so I'm not exactly sure, I think. But the answer I would say is absolutely yes. He went through the process, I believe, of going and asking the state of California whether he could be designated as its representative. And he was designated as its representative on his claims. So, yes, in my view, he certainly does have standing. Okay. I ask my colleague, does either of you, do either of you have additional questions for Mr. Platt? No. Thank you. All right. Thank you, gentlemen, for your argument on this interesting case. The case of Peck versus Swift, and I've left out a lot of the other parties in this, is submitted. And the court stands adjourned for the week. Thank you all. Have a good day. Thank you. Thank you, Your Honor. This court for this session stands adjourned.
judges: M. Smith, Ikuta, Steele